UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLEY A. LITTLE

Plaintiff,

v.

AMERIHEALTH CARITAS SERVICES,
LLC ET. AL.

Defendants.

Case No. 19-12150

SENIOR U. S. DISTRICT JUDGE
ARTHUR J. TARNOW

U. S. MAGISTRATE JUDGE
R. STEVEN WHALEN

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO SUMMARY JUDGMENT [43]**

On July 23, 2019, Ashley Little filed this discrimination and retaliation action against her former employer, AmeriHealth Caritas Service, LLC, and her supervisor, Paul Stevenson. Ms. Little's Complaint [1] alleges: Age Discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101 *et seq.* (1992) (Count I), Race Discrimination in violation of ELCRA and 42 U.S.C. § 1981 (Count II), Retaliation in violation of ELCRA and 42 U.S.C. § 1981 (Count III), Disability Discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL § 37.1101, *et seq.* (Count IV), Retaliation in violation of Michigan's Workers

Disability Compensation Act, MCL § 418.301 (13) (Count V), Retaliation in violation of Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. (Count VI), and violations of Michigan's Bullard-Plawecki Employee Right to Know Act, MCL 423.501 *et seq*. (Count VII).

On October 16, 2020, Defendants filed a Motion for Summary Judgment [43] to dismiss all counts. Plaintiff filed a Response [47] on November 16, 2020. Defendants filed a Reply [53] on December 18, 2020. The Court held a hearing on the Motion [43] on April 14, 2021. For the reasons stated below, Defendants' Motion [43] is **GRANTED in part** and **DENIED in part**.

## FACTUAL BACKGROUND

### I.    Plaintiff and Defendant Stevenson Begin Working Together

Ashley A. Little is a 35-year-old African American woman who was employed by AmeriHealth Caritas Services, LLC ("AmeriHealth"). (ECF No. 47-3, PageID.1084). Little was employed as a financial analyst at AmeriHealth's Southfield, Michigan office from December 2015 to March 2019. (ECF No. 47-3); (ECF No. 47-5). Prior to joining AmeriHealth, Little had approximately 9-years of experience in finance and accounting related positions. (*Id.*).

Paul E. Stevenson, Little's supervisor, is a 59-year-old Caucasian man, who was hired by AmeriHealth in August 2016 as Director of Finance. (ECF No. 47-3);

(ECF No. 47-4). At the time of Stevenson's hiring, Latitia Chavis was in an intermediate role between Little and Stevenson as a Finance Manager. (*Id.*) Chavis found Little completed her work in a timely and accurate manner and was competent, hardworking, professional, and eager to help. (*Id.*). Stevenson, on the other hand, claims that Little never performed all the duties of a financial analyst and instead performed administrative duties. (ECF No. 43-8, PageID.676-79). However, Stevenson also admits that she never refused to do anything that was asked of her. (*Id.*).

Little claims that Stevenson subjected her to a hostile work environment due to her age and race. For example, within days of him starting at AmeriHealth, Stevenson raised his voice at Little when he noticed her emailing his predecessor, the former interim director of finance. (ECF No. 47-3); (ECF No. 47-4). Little alleges that during this exchange, Stevenson yelled at her to stop seeking direction from the former director and instead only report to him. (*Id.*). This occurred at Little's workspace and in the presence of nearby coworkers. (*Id.*).

Little also claims that Stevenson prohibited her from working remotely. Prior to Stevenson's hiring, Chavis permitted Little to regularly work from home one to three days a week. (ECF No. 43-4, PageID.577-78). Stevenson discontinued this practice shortly after joining AmeriHealth. (ECF No. 43-8, PageID.673). Little

claims that when she asked Stevenson about why he would no longer permit her to work from home, he said she was "too young," had not put in enough time to earn the privilege of working from home, and that he considered her as just a "data entry person." (ECF No. 47-3); (ECF No. 47-11). Chavis also talked with Stevenson about this new restriction on Little. Stevenson told Chavis that Little was immature, "fresh out of college," and "just a data entry person," although he had no specific complaints about her behavior or work. (*Id.*). Stevenson does not recall, but also does not dispute, that he told Little he was taking away her remote working privilege, because she was too young. (*Id.*).

In addition, Little claims that Stevenson tracked her whereabouts in the office in a way that went beyond simple micromanagement and was excessive enough to make her feel uncomfortable and targeted. (*Id.*). Chavis agrees that Stevenson's tracking of Little was "abnormal." (*Id.*).

## II.    Plaintiff's Internal Complaints – Late 2016 and Early 2017

Little complained about Stevenson's management to various human resource professionals within AmeriHealth, namely Lasonya Anderson, Anthony Miller, and LaSherrial Mallet. (ECF No. 43-16, PageID.737, 743-45). In the fall of 2016, Little reached out to Anderson, who worked out of the Washington D.C. office, because AmeriHealth's Southfield office did not have a HR representative. (ECF No. 47-10).

Little complained to Anderson about Stevenson yelling at her for emailing the former director, his comments that Little was "too young", and his excessive scrutiny of her. (*Id*.). Anderson kept little record of this communication with Little and took little to no action to investigate or address it and ultimately referred Little to Miller. (*Id*.).

In early 2017, Little detailed the same complaints to Miller. In response, Miller suggested that Little "stroke [Stevenson's] ego" in order to remediate the hostile environment she was perceiving.  (*Id*.). Overall, records about any response made by Anderson and Miller are incomplete, and whatever actions did take place (i.e. meetings and discussions) were unsatisfactory for Little, who felt increasingly harassed and targeted.  (ECF No. 47-10); (ECF No. 47-12).

In approximately March of 2017, Anderson left his position and Mallet replaced him. (ECF No. 47-3); (ECF No. 47-7). In addition to complaints about his tracking and hostility, Little complained that Stevenson disparaged and undermined her to others at AmeriHealth. (*Id*.). Mallet held an in-person meeting with Little and Stevenson in the spring of 2017 to discuss their working relationship and expectations for their roles. (*Id*.). Little alleges that after this meeting Stevenson instructed her not to speak to her co-workers during her work hours in the future.

(*Id.*). During this same timeframe, Chavis left the finance department, leaving Stevenson as Little's direct supervisor. (ECF No. 47-8).

### III.   Plaintiff's Mental Health Leave of Absence

From May to December 2017, Little took a medical leave of absence due to depression and anxiety she attributed to her work environment. (ECF No. 43-4, PageID.601); (ECF No. 43-30); (ECF No. 43-31); (ECF No. 43-32).  This leave was medically prescribed by Little's physician due to her inability to work under Stevenson and was administered at first under FMLA and later as an Americans with Disabilities Act accommodation. (*Id.*). She was referred to a therapist and psychiatrist and prescribed anti-anxiety and sleep medication. (ECF No. 47-3); (ECF No. 47-14). While Little was on leave, Stevenson assigned Little's tasks to Roseanne Carlin, a Caucasian woman in her 50s or 60s who worked for AmeriHealth remotely from her home in Nebraska. (ECF No. 43, PageID.669). Little and Stevenson agree that Carlin made errors while performing these tasks. Stevenson characterizes these errors as not significant in nature and he never disciplined or wrote up Carlin for any of them.  (ECF No. 47-4, PageID.1296).

Upon her return to work, Little's physician recommended that she work from home one to two days per week and be transferred to another supervisor. (ECF No. 43, PageID.512). In January 2018, AmeriHealth approved Little to work one day a

week from home. (*Id*.). It did not, however, grant her request to be transferred to another supervisor. When Little asked the office's HR representative, Ashley Sandzik, about her request to be transferred, Sandzik, aware of Little's mental health issues, called her "sensitive and fragile." (ECF No. 48, PageID.1992).

During this period, Stevenson's supervisor, Heidi Chan, directed that Little's workstation be moved away from her co-workers. (ECF No. 47-3); (ECF No. 47-4). Additionally, Little claims that Stevenson refused to communicate with her outside of email because she was "making claims." (ECF No. 47-3); (ECF No. 47-9). In November 2018, Little's physician recommended she be permitted to increase her remote work schedule to three days a week. (ECF No. 43-36). AmeriHealth granted this request in February 2019. (ECF No. 43-37).

## IV. Plaintiff's Slip-and-Fall Injury Leave of Absence

Little suffered an injury following a slip and fall in AmeriHealth's parking lot in February 2018, and as a result took a second leave of absence through April 2018. (ECF No. 43-38); (ECF No. 43-39). She received workers' compensation for this injury from February 27 to April 17, 2018. (*Id*.). Upon her return to work, Little continued to utilize workers' compensation and FMLA leave for medical appointments related to her injury. (*Id*.).

## V.      Plaintiff's Internal Complaints - 2018

After her return from her injury-related leave of absence, Little was assigned and completed virtual training modules by Stevenson, who claimed they were necessary for her to begin performing tasks that were part of her job description. (*Id.* at PageID.510). After Little completed the modules, Stevenson asked her about what she had learned and about basic work practices. (ECF No. 43-4); (ECF No. 43-8). Little characterizes these inquiries as "quizzes" and claims that they resulted in her feeling targeted, harassed, and humiliated. (ECF No. 47-3); (ECF No. 47-4). In October 2018, Little renewed her complaints to Mallet about her treatment and work environment, citing these quizzes and specifically alleging age and race discrimination. (*Id.*).

## VI.     Plaintiff's MDCR Charge

On August 25, 2017, during Little's mental health leave of absence, Little filed a charge of discrimination and retaliation with the Michigan Department of Civil Rights ("MDCR"), alleging Stevenson caused a hostile work environment based on her age. (ECF No. 43-43). In October 2018, Mallet told a MDCR investigator that Little had not complained to HR about age discrimination, race discrimination, or a harassing work environment. (ECF No. 47-7). However, during her deposition in this case in March 2020, Mallet admitted that her representations

to MDCR were untrue and that she forgot and/or misspoke when speaking with the investigator. (*Id.*). After reviewing documents supplied by Little and conducting interviews with witnesses, the MDCR issued a Final Report on December 3, 2018, concluding that there was insufficient evidence to support Little's complaint. (ECF No. 43-20).

## VII.   Conflict Expands – Late 2018 to Early 2019

Relations between Little and her employer worsened in the months immediately preceding her termination.  In the latter part of 2018, Stevenson, Chan, human resources, and AmeriHealth leave policy specialist communicated frequently about Little's medical absences and what company policies governed them.  (ECF No. 47-28); (ECF No. 47-29); (ECF No. 47-30); (ECF No. 47-31); (ECF No. 47-32); (ECF No. 47-33); (ECF No. 47-34); (ECF No. 47-4).  In November 2018, Little was approved for intermittent FMLA leave for her workers' compensation medical appointments, which Little claims visibly enraged Stevenson.  (ECF No. 47-3); (ECF No. 47-7); (ECF No. 47-9).

In February 2019, Little alleges she was setup when HR representative, Sandzik, asked her to send a contractor report to another employee.  Little was then chastised for including sensitive information in the report and allegedly making the other employee uncomfortable. (ECF No. 47-3); (ECF No. 47-39). The employee's

supervisor, Wendy Kwapis, later expressed confusion about this incident, saying that the report was unnecessary, and that the employee had not expressed any discomfort. (*Id*.).

Little received "meets expectations" evaluations in 2016 by supervisors Chavis and Stevenson, in 2017 by Chavis and Stevenson, and in 2018 Midyear by Stevenson only.  (ECF No. 47-13); (ECF No. 47-22); (ECF No. 47-25). Then on March 7, 2019, Stevenson gave Little a substandard "partially meets expectations" evaluation, which, atypically, included a review by Stevenson's supervisor, Chan, and human resources representatives.  (ECF No. 47-18). In this review, Stevenson did not give Little any goals for the following year.  (ECF No. 47-4). He additionally critiqued Little for minor infractions such as making reply/reply-to-all email errors and attending a company charity event without notifying him.  (*Id*.).  Little informed Mallet of her disagreement with this review the following day.  (ECF No. 47-38).

## VIII.  Plaintiff's Termination and Aftermath

On March 11, 2019, Little was asked to provide an orientation tour to Natasha McClendon, a new hire at AmeriHealth.  (ECF No. 43-4, PageID.608).  After the tour, McClendon's supervisor asked her to recount via email disparaging comments that Little made about the workplace, including "are you ready for this zoo," "leadership is very petty," and "the departments are very cliqued up."  (*Id*. at

PageID.609).  Little denies calling leadership petty but admits communicating the other characterizations.  (*Id*.).

Also, on March 11, 2019, Little had a conversation with a co-worker, Wendy Kwapis, who had given notice that she was leaving AmeriHealth at the end of that week.  (*Id*. at 606-07).  Kwapis claims that during this conversation Little said that her husband was so angry with Stevenson that he had attempted to come to the office to kill him on more than one occasion.  (ECF No. 43-19, PageID.798-99). Little denies ever saying that and instead says Kwapis started up a conversation about difficulties Kwapis had with her own supervisor.  (ECF No. 47-3). Both Little and Kwapis agree that during this conversation, Kwapis specifically inquired about how Little's discrimination claims were going.  (ECF No. 47-3); (ECF No. 47-39). Little claims that while she did mention that her husband was upset about the treatment she experienced at work, it was Kwapis who said her husband wanted to "choke" Kwapis's supervisor.  (ECF No. 47-9).

On March 13, 2019, human resource representative Mallet was informed about both the McClendon email and the Kwapis allegations.  (ECF No. 43-47); (ECF No. 43-48); (ECF No. 43-17, PageID.779-80). With approval from Chan, Mallet decided to terminate Little's employment.  (ECF No. 43-17, PageID.770-72). Mallet and Sandzik then informed Little by phone on March 14th, citing both the

McClendon and Kwapis stories.  (ECF No. 48. PageID.2002).  McClendon reports that she felt pressured by her supervisor to write an email about Little's comments and that mangers at AmeriHealth assured her that her email had nothing to do with the firing, but that AmeriHealth had had problems with Little for a long time.  (ECF No. 47-41). Sandzik now claims that although she was involved in the termination phone call, she was unaware that Little's husband, and not Little herself, allegedly threatened Stevenson.  (ECF No. 47-18).

In May 2019, Stevenson transferred to AmeriHealth's North Carolina location as the Director of Finance.  (ECF No. 43-8, PageID.657).  At that location he hired the two individuals who directly report to him – Maggie Harris (Caucasian, 40s) and Kiara King (African American, 20s).  (*Id*. at 659, 660-64).

### Legal Standard

Defendant moves for summary judgment on all claims. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**ANALYSIS**

## Count I – Age Discrimination

Little claims Defendants discriminated against her on the basis of age in violation of Michigan's Elliot Larsen Civil Rights Act ("ELCRA") by (1) creating a hostile work environment and (2) engaging in disparate treatment.  MCL 37.2101.

### A.    Hostile Work Environment

Under ELCRA, the elements of a hostile work environment claim are:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

*Gibbs v. Voith Indus. Serv., Inc.*, 60 F. Supp. 3d 780, 795 (E.D. Mich. 2014).  Under element (5), AmeriHealth has vicarious liability for hostile environment discrimination conducted by its employees. Here, Defendants challenge that elements (2) and (4) have been established.

1.  Element 2 – Causation

As to element (2), age discrimination claims under the ELCRA require proof "that defendant's discriminatory animus was a 'substantial' or 'motivating' factor" for causation to be established. *Provenzo v. LCI Holdings, Inc.*, 663 F.3d 806, 818 (6th Cir. 2011) (citing *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124 (2003)).

Defendants challenge Little's claim that her age was a motivating factor in how she was treated. Little claims that from very early in their time together at AmeriHealth, Stevenson stated that he believed she was "too young" for the job and "too young" to deserve the privilege of working from home.[1] Chavis states that Stevenson's early critique of Little was that she was "immature," "inexperienced" or "fresh out of college." The Supreme Court has held that age discrimination does not occur where the motivating factor for an adverse employment action is merely correlated with age, like seniority of pension status, as opposed to actually being because of the employee's age. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611

---

[1] Defendant argues that the loss of the option to work from home is not "materially adverse" and is instead a "mere inconvenience, rather than a material loss of benefits, a demotion, a less distinguished title, diminished material responsibilities or other similar materially adverse employment action." *Hunter v. Gen. Motors LLC*, 2019 WL 1436847, *7 n.3 (E.D. Mich. Mar. 13, 2019). The Court notes that flexibility in one's work location can be of equal or greater "materiality" to any given individual, than many other examples adverse actions in case law, especially if the individual is a working parent with three young children, like Little.

(1993). Thus, an adverse employment action truly attributable to a worker's inexperience or immature actions, does not constitute age discrimination. However, Stevenson did not present a specific explanation of these characterizations of Little that would contradict an interpretation that he was motivated by a prejudice based on her age. Viewing all disputed evidence in favor of the non-movant, this element of motivation is sufficiently established to survive summary judgment.

### 2. Element 4 – Substantial Interference

Hostile work environment claims are to be evaluated on the "totality of the circumstances." *Harris v. Forklift*, 510 U.S. 17, 23 (1993). A court is to consider "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. A hostile work environment can be proven if the discriminatory conduct is either severe *or* pervasive, it need not be both. *Abeita v. TransAm Mailings, Inc*., 159 F3d 246, 251 (6th Cir. 1998) (citing *Harris*, 510 U.S. at 21). Whether or not a hostile work environment exists is "quintessentially a question of fact" for a jury. *Smith v. Rock-Tenn Servs., Inc.*, 813 F3d 298, 310 (6th Cir. 2016) (quoting *Jordan v. City of Cleveland*, 464 F3d 584, 597 (6th Cir. 2006)).

Defendants argue that Little was not subjected to "sufficiently severe or pervasive [harassment as] to alter the conditions of [her] employment and create an abusive working environment." *Gold v. FedEx Freight E., Inc.*, 487 F.3d 1001, 1010 (6th Cir. 2007).  On one hand, Little claims she was subject to humiliating scrutiny and hostile treatment, including yelling, excessive and abnormal tracking, refusals to meet, isolation, and disparagement of Little to co-workers.  Little says this hostility was so severe as to result in her depression and anxiety, conditions which necessitated a six-month leave of absence.  On the other hand, Defendants claim that Stevenson and Little merely had a personality conflict and that Stevenson only micromanaged Little.  This stark contrast in the parties' characterization of events points to an issue of fact that survives summary judgment.

### B.   Disparate Treatment

The elements of a prima facie case of disparate treatment age discrimination are: (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for her position; and (4) plaintiff was replaced by a substantially (older) person and/or the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination.  *Matras v. Amoco Oil Co.*, 424 Mich. 675, 683 (1986); *Debrow v. Century 21 Great Lakes, Inc.*, 463 Mich. 534 (2001).  Under the *McDonnell-Douglas* burden shifting analysis, if

the plaintiff can establish a prima facie case, the burden shifts to the employer-defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Jacklyn v. Schering-Plough*, 176 F.3d 921 (6th Cir. 1999).  If the defendant can offer such a reason, the burden shifts back to the plaintiff to show that the defendants' proffered reason is merely pretext for discrimination.  *Id*. at 392. The prima facie elements in dispute here are (3) and (4).

1.    Element 3 – Plaintiff's Qualifications

Defendants contend that Little's disparate treatment claims cannot survive summary judgment because she has not proven that "[s]he was performing [her] job at a level which met [her] employer's legitimate expectations." *Lamont v. MSX Intl.*, 63 F. Supp. 2d 778, 780-81 (E.D. Mich. 1999) (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991)).  However, since Stevenson declined to rate Little at a level below "meets expectations" in any of her reviews prior to the review held just one week before her termination, Defendants' argument is unpersuasive. Although it is undisputed that Little was not performing all the duties in AmeriHealth's Financial Analyst job description[2], Defendants point to no evidence that Little resisted any training offered her or refused any assignments given to her.

---

[2] AmeriHealth's Job Summary states: "The Financial Analyst is responsible for generating financial reports and assisting in establishing processes that enable timely information to be provided to management.  Primary duties include budget preparation, ratio analysis, forecasting, account analysis, journal entry preparation and other areas.  Evaluating processes and procedures

2.      Element 4 – Replacement and Circumstances

Little bases her direct evidence disparate treatment claim on a comparison with the Defendants' treatment of Carlin, the older Caucasian women who took over her duties while she was on both of her leaves of absence.  However, testimony supports the finding that Carlin was a temporary fill-in only, and not a replacement. Carlin did not acquire Little's position after the termination and in fact held a different position with AmeriHealth, as a Coordinator of Network Operations, under a different supervisor.

In addition to Little's lack of evidence to support a conclusion that she and Carlin were similarly situated, Little admits that she never witnessed any interaction between Carlin and Stevenson.  Little instead bases her claim of disparate treatment on the undisputed fact that Carlin made errors and makes the conclusory leap that Carlin was not scrutinized as closely as she was.  Without any evidence to present regarding Stevenson's interactions with Carlin and with a lack of an established similar situation between the two, this leap is too great for the disparate treatment claim to survive on a comparison to a replacement employee.

---

on a regular basis to ensure accuracy of results and knowledge of management accounting is critical to the position. This position works independently with corporate finance and management throughout the organization." (ECF No. 43-13, PageID.727).

However, given the analysis already detailed concerning the hostile work environment, circumstances giving rise to an inference of unlawful discrimination are present in this case.  Stevenson's initial complaints about Little, whether they be characterized as "too young" or as "immature" and lacking experience, did not come with any specific complaints about her work or her behavior.  Without this, a juror may infer that Stevenson's revocation of privilege, intense scrutiny, and disparagement of Little to coworkers was motivated by animus towards her age alone, irrespective of her performance. These circumstances are enough to establish element (4) of a prima facie disparate treatment case.

### 3.    Pretext

For the reasons stated in Section IV.B.2, there remains issues of material facts as to AmeriHealth's honest belief in the non-discriminatory reasons they offer for Little's termination.  Since Plaintiff alleges that termination was both an act of disparate treatment and retaliatory, the Court relies on its analysis of pretext to address Defendants' offered non-discriminatory reasons here. Accordingly, the Court denies summary judgment on Plaintiff's age discrimination claim.

**Count II – Race Discrimination**

Little claims Defendants discriminated against her on the basis of race in violation of 42 USC § 1981 and ELCRA by (1) creating a hostile work environment and (2) engaging in disparate treatment.

**A.**   Hostile Work Environment

Under ELCRA, a plaintiff is not required to establish that her race is the sole reason for her treatment; only that it is one of the reasons that made a difference. *See Hazle v. Ford Motor Co.*, 464 Mich. 456, 466 (2001).  A § 1981 claim, on the other hand, requires that plaintiff's status of a member of a protected class is a but-for cause of the harassment.  *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).

Little provides no evidence of racial animus on the part of the Defendants and does not allege that Stevenson or anyone else at AmeriHealth ever made a racial remark to her.  Her only evidence as to racial animus is her disparate treatment claim focusing on a comparison between the treatment of herself and a Caucasian woman, Carlin, who was Little's temporary replacement.  Little otherwise makes no effort to support the claim that her race made a difference, let alone was a but-for cause, in the imposition of a hostile work environment. This theory of liability therefore fails.

**B.**     Disparate Treatment

The elements of a prima facie case of disparate treatment race discrimination are: (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for her position; and (4) plaintiff was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

In dispute here are elements (3) and (4).  For the reasons stated above in the analysis of Count I, Defendants' contention that Little was unqualified for her position with AmeriHealth and therefore her discrimination claims cannot survive summary judgment, is sufficiently countered by her history of satisfactory performance reviews up until the week before her termination.  Thus element (3) is established.

1.     Element 4 – Replacement or Comparison with Similarly-Situated

As in Count I, Little here bases her disparate treatment claim on a comparison with the Defendants' treatment of Carlin.  For the reasons stated in I.B.2., Little has not established that Carlin was her replacement or that she and Carlin were similarly situated. This presents insufficient evidence to support a disparate treatment claim

in a comparison between the two. Little's race discrimination claim will not survive summary judgment.

## Count IV – Disability discrimination

Little claims Defendants discriminated against her on the basis of her disability status, in violation of Michigan's Persons with Disabilities Civil Rights Act (PWDCA), MCL 37.1101 *et seq.* by way of harassment and denial of accommodations. Little makes three distinct claims under this count: 1) denial of remote work, 2) denial of being transferred, and 3) harassment.

### A.    Denial of Accommodation

First, Little contends that her requested accommodation to work from home three days per week was unreasonably delayed for three months from November 2018 to February 2019. She cites *Newell v. Cent. Mich. Univ. Bd. Of Trustees* to frame the analysis of an unreasonable delay. 2020 WL 4584050, at *10 (E.D. Mich. Aug. 10, 2020). Defendants point out, however, that *Newell* states the delay is unreasonable only if it renders the accommodation "useless." *Id*. AmeriHealth accommodated her December 2017 request to work remotely for one day a week in January 2018. Plaintiff's second request, made in November 2018, was granted three months later, which is less than the four-month delay in *Newell* that resulted in a dismissal of plaintiff's disability discrimination claim. Considering both this

timeline and the fact that Little presents no evidence that the accommodation was useless when given, this claim does not present a material issue of fact.

**B.**   Transfer Denial

Little's second claim of accommodation denial concerns her December 2017 request to be moved to another supervisor, which AmeriHealth never granted. Of supervisor reassignment accommodation requests, the Sixth Circuit has said:

> While it is appropriate to consider the reasonableness of such a request on a "case-by-case" basis, there is a "presumption . . . that a request to change supervisors is unreasonable, and the burden of overcoming that presumption (i.e., of demonstrating that, within the particular context of plaintiff's workplace, the request was reasonable) therefore lies with the plaintiff."

*Cardenas-Meade v. Pfizer, Inc.,* 510 F. App'x 367, 372 (6th Cir. 2013). Little does not attempt to meet her burden to overcome the presumption of unreasonableness and therefore has not presented enough evidence for this claim to survive summary judgement.

**C.**   Harassment

Lastly, Little claims that she suffered harassment on the basis of disability. To illustrate this claim, Little specifically cites (1) an instance after her stress leave when human resources representative Sandzik said she knew Little was sensitive and AmeriHealth had to "handle her delicately," and (2) an escalation of Stevenson's harassing "antics" after Little was granted the one day-a-week work from home

accommodation.   Defendants counter that these isolated instances cannot substantiate a viable claim of disability harassment, which would require that "the harassment unreasonably interfered with Plaintiff's work performance and created a hostile work environment."   *Canning v. FCA US LLC*, 2017 WL 4918521, at *6 (E.D. Mich. Oct. 31, 2017).   Under this standard, Little's failure to provide anything other than one isolated comment from someone who was not her supervisor and generalized behavior allegations as evidence of disability harassment defeats this claim.

**Retaliation**

To establish a prima facie case of retaliation, plaintiff must satisfy the following elements: that "(1) she . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action."   *Beard v. AAA of Mich.*, 593 F. Appx 447, 451 (6th Cir. 2014). Little alleges three counts of retaliation against her age and race (Count III), worker's compensation activities (Count V), and FMLA activities (Count VI). The Court will address each element of each claim in turn.

1. <u>Protected Activity and Adverse Action</u>

   a. Count III – 42 USC § 1981 and ELCRA

Little claims Defendants retaliated against her age discrimination complaints, in violation of ELCRA and for her race discrimination complaints, in violation of 42 USC § 1981 and ELCRA. She alleges three adverse actions: 1) retaliatory harassment; 2) retaliatory performance review/bonus; and 3) retaliatory termination. Each protected activity and adverse action is discussed below, before turning to analyzing the causal connection.

Little engaged in protected activity by making verbal complaints to human resources representatives (Anderson, Miller, Mallet and Sandzik) arguably related to age discrimination. She also made a formal MDCR age discrimination charge in August 2017, which concluded in December 2018. She additionally made a written complaint to Mallet on October 1, 2018, which stated, "[he] has never quizzed Rosanne Carlin (who is a Caucasian, older telecommuter) about her job and I am still fixing major errors from Carlin. So why is it okay to start quizzing the young African American?" (ECF No. 47-26, PageID.1826).

Little argues that there are multiple examples of escalations of hostile treatment following the above discrimination complaints, formal and informal. Little's specific examples include: (1) Stevenson's instruction to Little after a

meeting with human resources to not talk to anyone else, (2) Stevenson restricting communication with Little to email only, because he knew she was "making claims," (3) placing Little in an isolated work space after the interviews were conducted for her MDCR charge, (4) Little's poor March 2019 performance review, which she claims led to her receiving a smaller bonus, and (5) Little's termination, which she argues was made under pretextual allegations of misconduct.

Defendants dispute that Stevenson ever instructed Little to limit her communication with her co-workers. Defendants' stance on the second and third alleged retaliation is that those actions were designed to make Little feel more comfortable in the workplace and they deny that Stevenson ever attributed his actions to Little "making claims." Defendants agree that the substandard performance review and the termination took place, but they provide alternative legitimate non-discriminatory reasons for these adverse actions. The retaliatory issue then turns on an argument concerning pretext.

### b. Count V – WDCA

Little claims Defendants retaliated against her in response to her workers' compensation protected activity, in violation of Michigan's Workers Disability Compensation Act ("WDCA"), MCL 418.301(13).

Little received workers' compensation benefits under WDCA from February to April 2018 after her workplace injury and was attending workers' compensation medical appointments through November 2018. Little argues that the WDCA anti-retaliation provisions protect employees both when they file claims and when they seek medical services for a work-related injury, thus her protected activity under WDCA continued through November 2018. *Cuddington v. United Health Services, Inc.* 298 Mich. App. 264, 274-75 (2012). As in Count III, here Plaintiff alleges retaliatory harassment, retaliatory performance review/bonus, and retaliatory termination in response to her workers' compensation claims. Liability here also turns on a matter of pretext.

### 2. Count VI – FMLA

Little claims Defendant retaliated against her for her FMLA protected activity, in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* She argues that Defendants "use[d] the taking of FMLA leave as a negative factor in [an] employment action." *Arban v. West Pub. Co.*, 345 F.3d 390, 403 (6th Cir. 2003).

Little applied for FMLA leave in May 2017 and intermittent FMLA leave in November 2018. Pointing out that her intermittent FMLA continued until January 2019, Little contends that her protected activity was temporally proximate enough

to her March 2019 termination to survive summary judgment. Again, Plaintiff alleges retaliatory harassment, retaliatory performance review/bonus, and retaliatory termination in response to her leave.

### 2. Causal Connection

#### a. Count III

Defendants argue that Little has failed to establish the element of a causal connection for all of her retaliation claims.  A causal connection can be inferred from the coupling of temporal proximity and evidence that Plaintiff was singled out because of the protected activity. *Mickey v. Zeidler Tool and Die Co.*, 516 F3d 516 (6th Cir. 2008).  With regard to the Count III retaliation claim, Defendants argue that the lapse of time between the formal MDCR complaint (August 2017) and Little's termination (March 2019) is much too long to establish temporal proximity, specifically citing the Sixth Circuit as "typically [finding] the causal connection element satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity."  *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 305 (6th Cir. 2012).

Little, however, renewed her discrimination complaints to human resources in writing in October 2018, a matter of five months before her poor performance review and termination in March 2019. From the record, it appears that the

interceding months seem to have been rife with conduct that Little alleges show a coordinated effort between some at AmeriHealth to get her to make a fireable mistake. This argument for temporal proximity is strong enough to survive summary judgment.

    b. Count V

In regard to the causal connection element of the Count V (WDCA) claim, Plaintiff alleges that Stevenson angrily stormed into Sandvik's office and slammed the door after learning that Little was granted intermittent FMLA leave in November 2018 to attend workers' compensation and medical appointments.  She claims the proximity of this event to the poor performance review, which took place in March 2019 is enough to infer a causal connection between her workers' compensation activities and her poor review and termination. Here, four months is within the limitations the Sixth Circuit recognizes as typical for temporal proximity. *Dye*, 702 F.3d at 305.

Defendants counter by citing cases in this district that hold that three to four months is insufficient to establish the temporal proximately necessary to infer a causal connection.  *Sommerville v. Shenker, Inc.*, 2017 WL 6621529 at *5 (E.D. Mich. Dec. 29, 2017); *Bradley v. XDM, Inc.*, 2017 WL 467407 at *7 (E.D. Mich. Feb. 03, 2017); *Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811, 828 (E.D. Mich. 2011).

They add that without "very close" ("less than 3 weeks") temporal proximity, "a plaintiff must proffer additional evidence of retaliatory conduct in order to proceed with their case," which they argue Little fails to do. *Carr v. City of Saginaw*, 2014 WL 6809880 at *6 (E.D. Mich. Dec. 2, 2014). As in Count III, a "matter of months," and evidence of a continuing chain of events from the WDCA protected activity in November 2018 leading up to the actionable actions in March 2019, is enough to satisfy the causal connection element.

### c.  Count VI

Similar to the analysis for temporal connection from Count V, the protected activity was followed by employment termination within a "matter of months" and evidence supports a continuing chain of events leading to termination.  The case for FMLA temporal connection is even stronger, as the FMLA protected activity took place through January 2019 and thus was separated from the March 2019 termination by only two months.

### 3.  Pretext

If a defendant in an employment discrimination case can articulate a legitimate, nondiscriminatory reason for the adverse employment decision, the burden shifts back to the plaintiff to show that the defendant's proffered reason is not the true reason, but merely a pretext for discrimination. *Jacklyn v. Schering-*

*Plough*, 176 F3d 921, 932 (6th Cir. 1999).  Plaintiff can prove pretext by showing that Defendant's proffered reason "1) had no basis in fact; 2) did not actually motivate defendant's conduct; or 3) was insufficient to warrant the challenged conduct." *Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 258 (6th Cir. 2002).   To instigate this burden-shift, the "employer need only articulate a nondiscriminatory rational; it need not prove it." *Merriweather v. United States Steel Corp.*, 2019 WL 4072645, \*12 (E.D. Mich. July 19, 2019), *report and recommendation adopted*, No. 18-10664, 2019 WL 4054926 (E.D. Mich. Aug. 28, 2019).

Little does not dispute that one of the alleged conduct violations cited as a reason for her termination (threat of violence) is a fireable offense if it was not pretextual.  However, she claims both reasons were pretextual in that both reasons did not actually motivate the firing and the new employee orientation comments did not warrant termination.  Human resource representative and termination decision maker, Mallet, agrees that the orientation comments were not a fireable offense on their own.  (ECF No. 47-7, PageID.1413-14).

Plaintiffs alleging pretext in a discriminatory adverse employment action "must put forth facts to demonstrate that the employer did not 'honestly believe in the proffered non-discriminatory reason.'" *Merriweather*, 2019 WL 4072645, \*12.

Defendants claim AmeriHealth relied in good faith in the email statements about the incidents provided by McClendon and Kwapis, but the strength of this claim is materially undercut by questions concerning how these two incidents came about.

The Sixth Circuit has stated that under the "honest belief rule," "an employer's proffered reason is considered honestly held where the employer can establish it reasonably reli[ed] on particularized facts that were before it at the time the decision was made." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285-86 (6th Cir. 2012). Defendants argue that Little misapplies the honest belief rule by focusing instead on whether the alleged conduct happened in the first place, which the honest belief rule deems immaterial. However, AmeriHealth's honest belief in the legitimacy of the events cited as termination reasons is questionable when one considers a slightly broader sequence of events.

The Court should consider the events at AmeriHealth spanning Little's October 2018 internal age and race discrimination complaint, her December MDCR age discrimination complaint that closed in December 2018, her WDCA activity through November 2018, her FMLA activity through January 2019, and her termination in March 2019. Little presents evidence that Stevenson, Mallet (human resources), Sandvik (human resources), and Chan (Stevenson's supervisor) spent a considerable amount of time in November 2018 discussing Little's PTO and medical

appointments and whether any of her behavior constituted a disciplinary infraction. Little's annual review, which usual occurred in January, was delayed until March because of unusual human resource involvement, and when it finally took place, AmeriHealth failed to include any goals for Little for the following year. The review took place the week prior to the McClendon and Kwapis incidents and Little's termination. Strangely, Little was asked to show McClendon around the office, even though she had let many of her co-workers know about her issues with management. Kwapis, who was friendly with Stevenson and said in her deposition that she "did not want to get tied into [Little's] bullshit," actively engaged Little in conversation about difficult supervisors and Little's MDCR complaint.

In this analysis, the honest belief that must be analyzed is that of the employer as a whole. AmeriHealth claims that events preceding the termination culminated in Mallet making the final call and Stevenson (who was coincidentally out of the office that week) being uninvolved in the final decision. However, Stevenson, alongside human resources and upper management, was heavily involved in the prior decisions regarding Little detailed above and influenced AmeriHealth's dealings with Little as a whole.

"[A] jury may consider the reasonableness, or lack thereof, of an employer's business judgment, insofar as it may assist in determining the employer's state of

mind." *In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988) (citations omitted). There is enough coincidence and oddity in these events to suggest coordinated activity among Stevenson and others at AmeriHealth to actively look for a reason to discipline or fire Little.   A jury could reasonably consider this evidence of coordination as strongly cutting against the reasonableness of AmeriHealth's claim of honest belief. *Id.*

For all three counts of retaliation, there remains issues of material facts as to (1) whether AmeriHealth and its decision makers honesty believed that Little had engaged in the alleged conduct and fired her for non-discriminatory reasons, (2) if the reasons it used where pretextual, and (3) if AmeriHealth in truth fired her in retaliation for her protected activity.

## Count VII – Violations of Michigan's Bullard-Plawecki Employee Right-to-Know Act

Little claims Defendants violated the Bullard-Plawecki Employee Right-to-Know Act, MCL 423.50, which requires an employer, upon written request, to provide an employee with access to their personnel file.   Mich. Comp. Law § § 423.503-504. Little claims she made a request for her AmeriHealth personnel file in May 2019, while AmeriHealth dates the request to October 2019.   The request was

fulfilled in December 2019.  Little contends the alleged delay of seven months is unreasonable.

Defendants counter that "delay alone in the production of a copy of the record is not a violation of the Act," because of "the absence of any time limit in the Act for an employer's compliance with an employee request for a copy of his/her personnel record." *Scuderi v. Monumental Life Ins. Co.*, 344 F. Supp. 2d 584, 604 (E.D. Mich. 2004) (granting summary judgment for the employer where delay in production did not impact lawsuit). Because Little has not alleged nor demonstrated that the production period, whether it was two months or seven, had any impact on her lawsuit or that it was deliberate, her Bullard-Plawecki claim does not present a material issue of fact.

### CONCLUSION

Th Court finds sufficient evidence to substantiate a genuine issue of material fact has been presented for Plaintiff's age discrimination and retaliation claims. Thus, Defendants' Motion for Summary Judgment [43] on Count I, Count III, Count V, and Count VI is **DENIED** and **GRANTED** on Count II, Count IV, and Count VII.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [43] is **GRANTED in part and DENIED in part.**

**SO ORDERED**.

<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Dated: November 10, 2021      Senior United States District Judge